METZGAR ET AL., APPELLANTS, *v.*
SUMMIT COUNTY CHILDREN'S SERVICES
BOARD, APPELLEE.

(No. 82AP-565—Decided December 2, 1982.)

Mr. Mark J. Lucas, for appellants.
Mr. Lynn C. Slaby, prosecuting at-torney, and *Mr. Michael J. Spetrino,* for appellee.

WHITESIDE, P.J. This is an appeal by appellants Daphne Metzgar and Robert Pfile from a judgment of the Franklin County Court of Common Pleas affirming a decision of the State Personnel Board of Review rejecting its hearing officer's recommendation and affirming the lay-offs of appellants by the appellee appoint-ing authority.

Although the board of review rejected the hearing officer's recommendation that the layoffs be disaffirmed, it is not so clear that the board rejected his findings of facts, which are as follows:

"The Appellants worked as House-parents for the Summit County Chil-dren's Services Board. They had both worked since at least July, 1979.

"The Appointing Authority presented evidence that the population of children in the various homes maintained by the Children's Services Board had decreased substantially from the middle of 1978 to the present. Thus, the Appointing Authority determined that a number of Houseparent positions were no longer necessary due to lack of work since a few of the homes had been closed.

"The Appointing Authority used four types of employees to perform Houseparent duties. Full-time permanent Houseparents were assigned to a par-ticular home. Full-time permanent floater Houseparents were assigned from one home to another as the need arose. Full-time temporary Houseparents were employed as the occasion arose to fill in for vacationing Houseparents. Finally, the Children's Services Board had a large pool of intermittent employees on whom it called to fill in day-to-day vacancies that occurred among the Houseparents.

"Following the layoff of the Ap-pellants, they both agreed to accept inter-mittent positions. As intermittents, they had both worked virtually full-time from the date of the layoffs. It is clear that

there is work for them to do on a full-time basis even though they were laid off for lack of work."

The hearing officer made the following conclusions of law in his report to the Board:

"The Appellants have worked full-time since being laid off although they are now called intermittent employees rather than full-time permanent employees. The Appointing Authority has failed to show that there is a lack of work justifying a layoff for that reason."

It is not clear that the board reviewed the evidence presented before the hearing officer, the actual language of the board's order tending to negate such a review and rejecting only the hearing officer's recommendation, although reversing both his report and recommendation. In any event, the opinion by the board is, as follows:

"The evidence is uncontroverted that a decline in the number of clients resulted in closing of some of the cottages operated by Appellee. The Appointing Authority, based on the facts found by the * * * [hearing officer], established lack of work thereby justifying the layoff."

Accordingly, there appears to be no factual inconsistency between the hearing officer's report and the findings of the board. The court of common pleas recognized this fact, stating in its decision: "It is of no import that appellants immediately found work as intermittent and temporary Houseparents, as the latter two positions are different in kind from the position of full-time, permanent Houseparents, though the duties of the two positions are similar." The findings of the hearing officer are supported by reliable, probative and substantial evidence, with the issue being the legal effect of such findings. The board of review and the trial court looked no further than the necessity of closing some of the cottages as justifying the layoffs of appellants. The board did not discuss the effect of appellants' continuing to work full-time, although being labeled "intermittent" employees because they had no regular job assignment but, instead, worked irregular shifts at irregular locations. Although not a finding of fact by either the board or the hearing officer, the court of common pleas found that the intermittent and temporary positions differed from the full-time permanent positions previously held by appellants.

While depending upon one's definition of "position," appellants may or may not be working at the same position as before. However, it is quite clear that they continue to be employed in a position within the same classification and performing the same duties that they performed before, although at various locations and at various shifts. *State, ex rel. Bossa*, v. *Giles* (1980), 64 Ohio St. 2d 273 [18 O.O.3d 461], firmly establishes that an employee under the circumstances involved in appellants' employment after the alleged layoff is a full-time employee.

Unfortunately, both the board and the court of common pleas were diverted by two side issues. First, the evidence establishes the need for layoffs by appellee appointing authority within the classification involved. There was a reduction in the number of persons to be employed. That, however, is not the determinative issue in this case and was not the determinative issue before the board. The issue is not whether there is a need for layoffs but whether appellants were properly laid off even though, in fact, they remain full-time employees performing the same duties. The second fallacy in the board's position is the assumption that labeling appellants "intermittent" and that their performing duties at irregular times and irregular places precluded them from being full-time regular employees. This is not the case.

There is nothing in the statutes which preclude a full-time regular employee from performing duties at various locations and working on various shifts.

Apparently, the scheme employed by appellee was to lay off all so-called intermittent employees, two regular part-time employees and approximately sixteen full-time employees, then re-employ numerous intermittents, who supposedly must be the first to be laid off. In other words, since intermittents must be laid off first pursuant to R.C. 124.32(C) (now R.C. 124.323[B] ), it necessarily follows that intermittent positions must be the last to be refilled when additional work is available.

Here, there was a lack of work. However, appellee admittedly reduced the work force to a number lesser than necessary to fulfill the work remaining to be performed. There is no question but that, when appellants were laid off, the need for the work which they performed full time thereafter was known to exist and to be necessary. In short, appellee laid off more employees than justified by the lack of work. This is the issue involved in this case, not whether there existed some lack of work.

In support of their appeal, appellants have raised four assignments of error, as follows:

"1. The court erroneously failed to reverse the order of the State Personnel Board of Review affirming the layoff of Appellants as full-time employees, because the Board's order was not supported by reliable, probative, and substantial evidence in the record.

"2. The court erroneously failed to reverse the order of the State Personnel Board of Review, because the concept of lack of work relied upon by the Board implied a definition of a civil service 'position' which was created through adjudication and which was inconsistent with the definition of a civil service 'position' contained in the formally promulgated rules of the Board and of the Director of Administrative Services.

"3. The court erroneously held that it was of no import that Appellants and others reinstated as temporary and intermittent employees in the same classification from which the Appellants were laid off as full-time employees, since such reinstatements were contrary to law.

"4. The court erroneously affirmed Appellants' layoff as full-time employees, since the layoff was a sham to deprive Appellants of some of the emoluments of full-time civil service status while Appellees received the benefit of their actual full-time service. The decision was contrary to law."

The first assignment of error is not well-taken because the board's order was supported by reliable, probative and substantial evidence but was founded upon an erroneous conclusion of law that the mere existence of lack of work necessarily justified all layoffs that were made.

The second assignment of error is well-taken, inasmuch as the board and the trial court did apparently misconstrue the meaning of "position" as applied to the facts and circumstances of this case.

The third assignment of error is well-taken, inasmuch as the trial court did erroneously conclude that the fact that appellants continued to work full time following their supposed layoff had no significance or import. However, the "reinstatements" were not contrary to law in the technical sense, since they in effect were only continued employment in a full-time position. To this extent, the third assignment of error is well-taken.

While it is doubtful that appellee's action was intentionally a sham, the effect is the same, inasmuch as it was predicated upon an erroneous assumption that appellants could be retained on full-time employment status as intermittents following a purported layoff without attaining full-time civil service status.

The important distinction in this case, however, is the erroneous assumption by appellee that the fact that hours may be irregular or that the work locations may vary from day to day necessarily precludes one from being a full-time

regular civil service employee. Although such an employee may be deemed an "extra," and possibly even subject to "call," and may be even working the forty-hour week over more than five days, the full-time status is not affected. While not precisely the situation herein involved, R.C. 124.01(H) defines "[f]lexible hours employee[s]" as those who work full-time so far as the weekly hours are concerned but may work more or fewer hours in any given day. Unfortunately, the statute does not define "intermittent employee." However, the term is defined by rule and, most assuredly, appellants do not meet that definition as set forth in Ohio Adm. Code 123:1-47-01(A)(24), as follows:

" 'Intermittent Employee' — An employee who works on an irregular schedule which is determined by the fluctuating demands of the work and is not predictable and whose hours generally are less than 1000 hours per year."

Likewise, it will be noted that "position" pertains to the duties and responsibilities performed and exercised without reference to the time of performance or the place of performance. Ohio Adm. Code 123:1-47-01(35). Accordingly, to this extent, the fourth assignment of error is well-taken.

For the foregoing reasons, the first assignment of error is overruled, but the second, third and fourth assignments of error are sustained to the extent indicated in this opinion; and the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court with instructions to reverse the decision of the State Personnel Board of Review and remand the cause to that board for further proceedings upon the objections to the hearing officer's report.

*Judgment reversed and cause remanded with instructions.*

STRAUSBAUGH and NORRIS, JJ., concur.