WOODS, Appellant,

v.

OAK HILL COMMUNITY MEDICAL CENTER, INC., Appellee.

[Cite as *Woods v. Oak Hill Community Med. Ctr., Inc.* (1999), 134 Ohio App.3d 261.]

Court of Appeals of Ohio,
Fourth District, Jackson County.

No. 98CA837.

Decided Sept. 3, 1999.

*Cole & Lewis, Richard M. Lewis* and *Jonathan D. Blanton,* for appellant.
*Reminger & Reminger Co., L.P.A.,* and *Gwenn S. Karr,* for appellee.

---

HARSHA, Judge.

I

Donald A. Woods appeals a judgment of the Jackson County Court of Common Pleas dismissing his complaint for injunctive relief and denying certification of a class action. He assigns three errors for our review:

"I. The trial court erred in finding that appellant Donald Woods lacks sufficient standing to bring this class action.

"II. The trial court erred in effectively overruling appellant's motion for class certification, as certification was proper under Civil Rule 23.

"III. As applied by the Jackson County Court of Common Pleas, Civil Rule 23 is unconstitutional, as it violates the affected class' Article I, Section 16 [Ohio Constitution] guarantee of the 'right to a remedy.'"

We hold that the trial court correctly determined that the appellant lacked standing to seek an injunction and maintain a class action. Further, we find no constitutional infirmity in denying the appellant's attempt at maintaining a class action. Accordingly, we affirm the trial court's dismissal of the appellant's complaint.

II

In April 1995, the appellant arrived at the emergency room at Oak Hill Community Medical Center ("Oak Hill") complaining of chest pain. An emergency room physician administered a series of tests on the appellant, including a CKMB% blood enzyme test. The CKMB% test is designed to detect the level of CKMB, an enzyme released by the heart during a myocardial infarction, *i.e.,* a heart attack. A "normal" level of CKMB% is less than four percent, while "abnormal" levels are between four percent and twenty-five percent. The appellant's test results, which were printed on a report form from Oak Hill's laboratory, showed a CKMB% ratio of 12.2 percent. However, the report form erroneously listed the "normal range" as between four percent and twenty-five percent.

The appellant remained at the hospital overnight before physicians later transferred him to Mt. Carmel Medical Center in Columbus, where he underwent heart catheterization and balloon angioplasty. A year later, the appellant filed a medical malpractice suit against Oak Hill and other defendants alleging that the

hospital failed to timely diagnose and treat his myocardial infarction. During the course of the malpractice lawsuit, cardiologist John Schroeder of the Stanford University Medical School reviewed the appellant's medical records and informed him of the incorrect notation of the "normal range" on the Oak Hill laboratory's CKMB% test report form. Schroeder also informed Oak Hill about this error, which the hospital's laboratory corrected in June 1996. Oak Hill's laboratory had listed the incorrect normal range on its report forms since September 1993. The appellant's medical malpractice suit ended in January 1998 with a jury verdict in favor of the defendants.

Prior to the trial in his medical malpractice action against Oak Hill, the appellant filed suit in this case for injunctive relief and certification of a class action. The complaint alleged that the appellant had asked Oak Hill to notify other patients who received CKMB% test results with an incorrect "normal range" notation and that Oak Hill had refused to do so. The complaint further prayed that Oak Hill "be ordered by injunction to identify the patients examined, diagnosed, and treated by using the incorrect normal range for the CKMB% test, to notify them, and to provide such further services to them as are necessary to protect their health." The complaint and a separately filed motion also asked the court to certify the appellant's "injunctive relief action" as a class action.[1] The appellant defined the class as those patients who had undergone CKMB% testing at Oak Hill from September 1993 through June 1996 and whose CKMB% results had shown between four percent and twenty-five percent.

Oak Hill moved to dismiss the appellant's complaint, arguing that the appellant lacked standing to sue for injunctive relief and therefore lacked standing to maintain a class action. Oak Hill also argued that the trial court, in any event, should deny the appellant's certification motion because the appellant had failed to satisfy the Civ.R. 23 requisites for a class action lawsuit. The trial court granted Oak Hill's motion to dismiss for lack of standing, which necessarily resulted in denial of the class certification motion. The court found that the appellant had already been notified of the inaccuracy of his CKMB% report form. Because the appellant had already received notice of the inaccurate CKMB% form from the Oak Hill laboratory, the court found that he "lack[ed] the standing to maintain this action." The appellant filed a timely notice of appeal.

### III

We analyze the first and second assignments of error together, as they raise interrelated issues concerning the trial court's dismissal of the appellant's com-

---

1. While injunctive relief is an equitable remedy and not traditionally considered as an independent cause of action, we need not address this potential flaw in appellant's pleadings in light of our decision concerning standing, *infra*.

plaint. The trial court found that the appellant lacked standing to sue in his own right, which foreclosed the possibility that he could maintain an action on behalf of either a class or himself alone. The appellant argues in the first two assignments of error that the trial court's standing analysis was incorrect and that he met all requirements contained in Civ.R. 23 for maintaining a class action. We disagree with the appellant.

 Normally, we review a trial court's determination of whether a class action may be maintained under Civ.R. 23 using an abuse-of-discretion standard. *Hamilton v. Ohio Sav. Bank* (1998), 82 Ohio St.3d 67, 70, 694 N.E.2d 442, 447; *Marks v. C.P. Chem. Co., Inc.* (1987), 31 Ohio St.3d 200, 31 OBR 398, 509 N.E.2d 1249, syllabus. This case, however, does not involve merely the court's denial of a certification motion. Indeed, the court did not explicitly deny the appellant's motion to certify a class action under Civ.R. 23. Rather, the trial court granted Oak Hill's motion to dismiss the appellant's complaint for lack of standing to sue. In effect, the court's decision constitutes a dismissal pursuant to Civ.R. 12(B)(6) for failure to state a claim upon which relief can be granted. See *A–1 Nursing Care of Cleveland, Inc. v. Florence Nightingale Nursing, Inc.* (1994), 97 Ohio App.3d 623, 626–627, 647 N.E.2d 222, 224–225 (holding that motion to dismiss under Civ.R. 12[B] is proper vehicle to raise a lack of standing); *Yo–Can, Inc. v. The Yogurt Exchange, Inc.* (Dec. 17, 1998), Mahoning App. No. 95CA72, unreported, 1998 WL 896547 (relying upon *A–1 Nursing Care* to observe that Civ.R. 12[B][6] motion was proper method of raising lack of standing). A dismissal for failure to state a claim presents a legal question, which we review *de novo*. *Shockey v. Fouty* (1995), 106 Ohio App.3d 420, 424, 666 N.E.2d 304, 306; *Wilson v. State* (1995), 101 Ohio App.3d 487, 490, 655 N.E.2d 1348, 1350. Dismissal for failure to state a claim is proper if it appears beyond doubt, presuming all factual allegations in the complaint to be true, that the plaintiff can prove no set of facts that would entitle him to relief. *State ex rel. Edwards v. Toledo City School Dist. Bd. of Edn.* (1995), 72 Ohio St.3d 106, 108, 647 N.E.2d 799, 801–802; *Perez v. Cleveland* (1993), 66 Ohio St.3d 397, 399, 613 N.E.2d 199, 200.

The appellant pleaded his complaint as a purported class action under Civ.R. 23. The Ohio Supreme Court has listed seven prerequisites that a potential class representative must satisfy before class action certification is appropriate. *Hamilton*, 82 Ohio St.3d at 71, 694 N.E.2d at 448; see, also, Civ.R. 23(A) and (B). Among these requisites is that the named representative be a member of the class.[2]

---

**2.** The trial court ruled only that the appellant lacked standing; it made no ruling as to any of the other prerequisites to maintaining a class action. Thus, although the parties argue at length regarding the appellant's satisfaction (or failure to satisfy) Civ.R. 23(A) and (B)

Standing is part and parcel of the requirement that the representative is a member of the class he seeks to represent. See *Hamilton*, 82 Ohio St.3d at 74, 694 N.E.2d at 450 (class membership requirement requires that representative have standing); see, also, *Paoletti v. Travelers Indemn. Co.* (May 6, 1977), Lucas App. No. L–75–196, unreported (noting that standing is a "separate and distinct" inquiry from remaining Civ.R. 23 requirements and presents an "essential threshold" plaintiff must cross before class representation may be determined), quoting *Weiner v. Bank of King of Prussia* (E.D.Pa.1973), 358 F.Supp. 684, 694–696. "In order to have standing to sue as a class representative, the plaintiff must *possess the same interest* and suffer the same injury shared by all members of the class he or she seeks to represent." (Emphasis added.) *Hamilton*, 82 Ohio St.3d at 74, 694 N.E.2d at 450, citing 5 Moore's Federal Practice (3 Ed.1997) 23–57, Section 23.21(1). Thus, to be a proper representative in a class action seeking injunctive relief, the plaintiff must have a basis for injunctive relief in his own right. See *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 97, 521 N.E.2d 1091, 1096.

In arguing that he has standing to bring this class action, the appellant urges us to focus upon the contours of the class he has defined, *i.e.*, persons who had CKMB% tests administered between September 1993 and June 1996 and who tested between four percent and twenty-five percent. Because he meets this factual description, the appellant argues that that should suffice to make him a member of the class. The appellant further urges us to ignore any argument that he lacks the "same interest" simply because he has already been notified of the inaccuracies of Oak Hill's CKMB% report form. The appellant argues that rigid adherence to standing requirements "ignores the facts and circumstances which are unique to this case and which merit an exception to the rule [of standing]." We disagree with the appellant because standing is an indispensable requirement of any action, including a class action.

The concept of standing asks whether a particular plaintiff may properly raise a particular claim. Where no statute confers standing on a particular plaintiff, the question depends on whether the party has alleged a "personal stake in the outcome of the controversy." *Cleveland v. Shaker Hts.* (1987), 30 Ohio St.3d 49, 51, 30 OBR 156, 158, 507 N.E.2d 323, 325; *Middletown v. Ferguson* (1986), 25 Ohio St.3d 71, 75–76, 25 OBR 125, 128–130, 495 N.E.2d 380, 384–385, quoting *Sierra Club v. Morton* (1972), 405 U.S. 727, 731–732, 92 S.Ct. 1361, 1364–1365, 31 L.Ed.2d 636, 640–642. This "personal stake" requirement has three basic elements: (1) "injury in fact" to the plaintiff that is concrete and particular-

---

requirements, we limit our discussion to whether the trial court correctly observed that the appellant lacked standing to maintain the suit.

ized, (2) a causal connection between the injury and the conduct complained of, and (3) redressability, *i.e.*, that it is likely that the injury will be redressed by a favorable decision granting the relief requested. *Lujan v. Defenders of Wildlife* (1992), 504 U.S. 555, 560–561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351, 363–365. The fact that a plaintiff seeks to bring a class action does not change this standing requirement. Individual standing is a threshold to all actions, including class actions. *Fallick v. Nationwide Mut. Ins. Co.* (C.A.6, 1998), 162 F.3d 410, 423. As the United States Supreme Court has observed:

■ "That a suit may be a class action * * * adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Simon v. E. Ky. Welfare Rights Org.* (1976), 426 U.S. 26, 40, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450, 461, fn. 20; see, also, *Lewis v. Casey* (1996), 518 U.S. 343, 357, 116 S.Ct. 2174, 2183, 135 L.Ed.2d 606, 622.

■ Thus, if a named plaintiff purporting to represent a class does not establish the requisite standing, he may not seek relief on behalf of himself or any other member of the class. *O'Shea v. Littleton* (1974), 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674, 682.

■ The trial court properly dismissed the appellant's complaint and his attempt to certify a class action because he does not have standing to seek the injunctive relief sought. The only injunctive relief prayed for by the appellant consists of an order compelling Oak Hill to inform all members of the purported class that their CKMB% report forms from the Oak Hill laboratory listed an incorrect "normal range." However, the appellant has already received notice that his test results listed an erroneous "normal range." Assuming that the inaccuracy complained of has caused an "injury in fact" for standing purposes, the appellant fails to meet the "redressability" prong because he has already received the relief he seeks for the class. Thus, an injunction does nothing for the appellant individually. When a plaintiff has already been afforded the particular relief sought, he has no injury to redress and therefore no standing to seek injunctive relief. See *Ward v. Walsh* (C.A.9, 1993), 1 F.3d 873, 881 (prisoner seeking injunction allowing Jewish prisoners to wear religious jewelry, yarmulkes, and talliths lacked standing because prison policy already allowed him to wear these items); *Hardin v. Harshbarger* (N.D.Ill.1993), 814 F.Supp. 703, 707 ("a party that cannot demonstrate that an injunction will accomplish some tangible good in [his or] her favor has no standing to seek such relief"). Without individual standing to seek an injunction, the appellant cannot maintain a class

action for injunctive relief. *Warner, supra,* 36 Ohio St.3d at 97, 521 N.E.2d at 1096.

■ Despite having received notice of the erroneous Oak Hill laboratory report form, the appellant intimates that he is still a valid member of the class because Oak Hill never "voluntarily notified" him of the error. Instead of being "notified" in the manner sought by this injunctive class action, the appellant learned of the mistake during his prior malpractice suit against Oak Hill. The appellant therefore reasons that he is still a valid member of the class because he did not receive the requested relief in the exact manner requested in this case. This argument makes little sense. Whether Oak Hill "voluntarily notified" the appellant is of no consequence; indeed, the appellant seeks an injunction *commanding* Oak Hill to give notice to the class, essentially asking that Oak Hill do something *involuntarily.* Further, simply because the appellant received his relief in a manner other than an injunction proceeding does not change his lack of standing. The relevant inquiry in an analysis of standing for injunctive relief focuses on whether the injunction sought would provide the appellant with some tangible good, *i.e.,* whether he has some "personal stake" in the injunction being granted. See *Ottawa Cty. Bd. of Commrs. v. Marblehead* (1995), 102 Ohio App.3d 306, 316, 657 N.E.2d 287, 293 (absent statutory authority to bring injunction, standing to seek injunction exists only where party has sufficient personal stake in the outcome of a controversy). If the plaintiff has already received the relief sought through other channels, the injunction will not result in a tangible good to the plaintiff, removing the need for an injunction and therefore resulting in a lack of standing. *Ward v. Walsh, supra,* 1 F.3d at 881; *Hardin v. Harshbarger,* 814 F.Supp. at 707. Notwithstanding the appellant's insistence that he is committed to representing the purported class and that he has an "interest" in the litigation, the appellant lacks an "interest" in the legal sense. Assuming the appellant is sincere in his desire that the class receive notice of the erroneous CKMB% report forms, such a "spirited dispute" alone is not sufficient to confer standing to sue. See *Richardson v. Ramirez* (1974), 418 U.S. 24, 35–36, 94 S.Ct. 2655, 2661–2662, 41 L.Ed.2d 551, 560–561; *Hall v. Beals* (1969), 396 U.S. 45, 48–49, 90 S.Ct. 200, 202, 24 L.Ed.2d 214, 217–218; *United States Parole Comm. v. Geraghty* (1980), 445 U.S. 388, 421, 100 S.Ct. 1202, 1222, 63 L.Ed.2d 479, 507, fn. 16 (Powell, J., dissenting).

■ Throughout his brief, the appellant urges us to ignore the requisite of standing and allow him to pursue a class action in this case. Contrary to the appellant's wishes, however, we may not ignore the requirement that a plaintiff have standing to sue. The standing requirement is essential to " 'ensure that "the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." ' " *State ex*

*rel. Dallman v. Franklin Cty. Court of Common Pleas* (1973), 35 Ohio St.2d 176, 179, 64 O.O.2d 103, 105, 298 N.E.2d 515, 516–517, quoting *Sierra Club v. Morton,* 405 U.S. at 732, 92 S.Ct. at 1364, 31 L.Ed.2d at 641, and *Flast v. Cohen* (1968), 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947, 962. If we ignore the standing requirement, we would be ignoring a vital aspect of our adversary system. See *id.;* see, also, *Fortner v. Thomas* (1970), 22 Ohio St.2d 13, 14, 51 O.O.2d 35, 35, 257 N.E.2d 371, 372 (courts decide "actual controversies between parties legitimately affected by specific facts"). The requirement that a plaintiff have standing to sue is an indispensable element of justiciability that we may not compromise.

The first and second assignments of error are overruled.

## IV

In his third assignment of error, the appellant raises an alternative argument in support of overruling the trial court's dismissal of his complaint. The appellant argues that application of the standing requirement in this case violates Section 16, Article I of the Ohio Constitution by denying the purported class the benefit of a remedy for Oak Hill's mistake. Section 16, Article I of the Ohio Constitution, also known as the "Right to a Remedy" provision, states:

"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."

Specifically, the appellant argues that the standing requirement creates a "Catch–22" in which there would never be a proper plaintiff to represent the class because "any person with knowledge sufficient to cause them [*sic*] to demand notice would automatically be an improper Plaintiff, since they [*sic*] would no longer need the notice requested." Thus, the appellant argues that there could never be a class action, denying the class a remedy in violation of Section 16, Article I of the Ohio Constitution. We reject the appellant's constitutional argument as logically and legally flawed.

The first flaw in the appellant's argument rests with the notion that anyone "with knowledge" of the Oak Hill laboratory's erroneous notation on the report form is eliminated from potential representation of the purported class. The appellant does not lack standing simply because he has learned of the Oak Hill laboratory using an erroneous report form from September 1993 to June 1996. The key reason that the appellant lacks standing is that he has achieved the relief sought, *i.e.,* notification that his CKMB% report form listed an inaccurate "normal range." Some other person who learns of this mistake could theoretically maintain this class action, provided all the other Civ.R. 23 requirements are

satisfied, so long as that person has not received particularized notice from Oak Hill that *his or her* CKMB% report form contained an inaccuracy. Mere knowledge that Oak Hill's laboratory erred on its report form does not result in a lack of standing; rather, it is the appellant's particular situation that makes him an inappropriate plaintiff for injunctive relief, *i.e.*, being one *who has already received individualized notice* of the Oak Hill laboratory's reporting error.

A situation closer to the "Catch–22" type of scenario suggested by the appellant (*i.e.*, anyone receiving notice from Oak Hill of the laboratory's error would preclude a class action) arguably arises if the plaintiff receives the requested relief *after* filing suit. This situation would *not* result in a lack of standing to bring a class action because the plaintiff had *not* received his remedy prior to filing suit. Rather, this situation would implicate the mootness doctrine, which dictates that a plaintiff must have a personal stake in the outcome for the duration of the litigation. See *Geraghty, supra*, 445 U.S. at 397, 100 S.Ct. at 1209, 63 L.Ed.2d at 491 (defining mootness as " 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation [standing] must continue throughout its existence [mootness]' "). *Id.*, quoting Monaghan, Constitutional Adjudication: The Who and When (1973), 82 Yale L.J. 1363, 1384. Even in this situation, however, the appellant's "Catch–22" theory is not persuasive. If a plaintiff purporting to represent the class has his claims mooted *after* the trial court certifies the class action, it is well settled that the class action remains viable because "the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by the [named representative]." *Sosna v. Iowa* (1975), 419 U.S. 393, 399, 95 S.Ct. 553, 557, 42 L.Ed.2d 532, 540. The more troubling situation arises when a named plaintiff's claims become moot *before* the trial court's ruling on a certification motion. In that instance, the concern is that the defendant could "pick off" a named plaintiff's claims before class certification in an attempt to have the class action dismissed as moot. As a practical matter, allowing the class action to be mooted would prevent the class from ever becoming certified. Accordingly, courts have recognized that this type of defense strategy "could prevent the courts from ever reaching the class action issues, [leaving class certification] at the mercy of a defendant, even in cases where a class action would be most clearly appropriate." *Susman v. Lincoln Am. Corp.* (C.A.7, 1978), 587 F.2d 866, certiorari denied (1980), 445 U.S. 942, 100 S.Ct. 1336, 63 L.Ed.2d 775. Thus, in situations where a pending motion for class certification is pursued with reasonable diligence, the class action will not be mooted by a defendant's efforts to "pick off" claims of the named plaintiffs by tendering the relief sought. *Id.* See, also, *Brunet v. Columbus* (C.A.6, 1993), 1 F.3d 390, 400; *Lusardi v. Xerox Corp.* (C.A.3, 1992), 975 F.2d 964, 981–982; *Reed v. Heckler* (C.A.10, 1985),

756 F.2d 779, 786–787; *Zeidman v. J. Ray McDermott & Co.* (C.A.5, 1981), 651 F.2d 1030, 1050–1051.

The second flaw in the appellant's constitutional argument rests with his misapplication of Section 16, Article I. The appellant cites a number of Ohio Supreme Court cases invalidating statutes of limitations and repose that barred certain claims before plaintiffs knew or could have known of them. See, *e.g.*, *Brennaman v. R.M.I. Co.* (1994), 70 Ohio St.3d 460, 639 N.E.2d 425 (invalidating ten-year statute of repose for actions based upon defective improvement to real property); *Hardy v. VerMeulen* (1987), 32 Ohio St.3d 45, 512 N.E.2d 626 (declaring unconstitutional a repose period barring medical malpractice claims regardless of plaintiff's knowledge of injury); *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 514 N.E.2d 709 (statute of repose cannot bar claims of medical malpractice plaintiff who discovered injury less than one year before repose period expired); *Mominee v. Scherbarth* (1986), 28 Ohio St.3d 270, 28 OBR 346, 503 N.E.2d 717 (statute of repose for medical malpractice claims unconstitutional as applied to minors). These cases are inapposite to the situation before us and do not lead us to conclude that the appellant's lack of standing violates Section 16, Article I. The cases invalidating statutes and rules on the basis of Section 16, Article I have involved "serious infringement of a clearly preexisting *right to bring suit.*" (Emphasis added.) *Fabrey v. McDonald Police Dept.* (1994), 70 Ohio St.3d 351, 355, 639 N.E.2d 31, 35; see, also, *Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 426, 633 N.E.2d 504, 513 (Section 16, Article I prevents the denial of a remedy that would leave plaintiff without legal recourse). The situation in this case results in no such denial.

 Preventing a plaintiff who lacks standing from maintaining a class action does not infringe any purported class member's "right to bring suit." Any purported class member who feels he or she has been aggrieved by the conduct of Oak Hill may bring suit on his or her *own* behalf to seek redress for his or her own injuries. Further, every member of the appellant's purported class has a right to demand his or her medical records and may assert a civil action for the hospital's refusal to honor that demand. R.C. 3701.74(C) and (D). Rather than taking away anyone's right to bring suit, the appellant's lack of standing merely prevented him from maintaining a class action. However, the appellant has provided us with no authority for the proposition that there exists a "right" to bring a class action. To the contrary, the decision to certify a class action rests within the sound discretion of the trial court. See *Hamilton*, 82 Ohio St.3d at 70–71, 694 N.E.2d at 447–448; *Marks*, 31 Ohio St.3d at 201, 31 OBR at 398–399, 509 N.E.2d at 1252. The denial of class action certification is simply the denial of the opportunity to use a particular procedural device, not the infringement of a right to bring suit. The appellant's lack of standing to bring suit and maintain a class

action presents no conceivable violation of Section 16, Article I of the Ohio Constitution.

Finally, the nature of the appellant's purported remedy is inconsistent with the notion that the purported class has been denied a remedy in the constitutional sense. The appellant sought to certify a class action under Civ.R. 23(B)(2), seeking injunctive relief. Although the appellant argues that the purported class has been denied a remedy in the form of injunctive relief, such a denial cannot form the basis of a Section 16, Article I violation. An injunction is an extraordinary equitable remedy that a person does not demand as a matter of right; rather, such equitable relief rests in the sound discretion of the trial court. *Perkins v. Quaker City* (1956), 165 Ohio St. 120, 59 O.O. 151, 133 N.E.2d 595, syllabus. Even though a defendant may have violated some legal right of a plaintiff and the plaintiff may be entitled to some legal redress, an injunction does not automatically follow. *Id.* at syllabus and 125, 59 O.O. at 153–154, 133 N.E.2d at 598. Thus, a denial of injunctive relief cannot form the basis of a purported violation of a "right to a remedy." The third assignment of error is overruled.

Having overruled each of the appellant's assignments of error, we affirm the trial court's judgment of dismissal.

*Judgment affirmed.*

KLINE, P.J., and PETER B. ABELE, J., concur.